# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAREN HOGELIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 10-2679-JWL |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ's) application of the Frey test, Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987), in determining that Plaintiff's seizures would not be as limiting if he fully cooperated with his medication and with his follow-up care, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.    Background**

Plaintiff applied for both DIB and SSI in August 2007, alleging disability beginning December 7, 2006. (R. 15, 126-40). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 12, 56-59, 71-86). Plaintiff's request was granted, and Plaintiff appeared with counsel for a video hearing before ALJ Patricia E. Hartman on March 12, 2010. (R. 12, 31-32). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 12, 33-55).

ALJ Hartman issued her decision on May 5, 2010, finding that Plaintiff was not disabled within the meaning of the Act. (R. 15-25). Specifically, she found that Plaintiff's congenital heart condition and back disorder are not severe impairments, but that he has severe impairments of seizure disorder, gastroesophageal reflux disease (GERD), depressive disorder, and personality disorder. (R. 17-18). She found that Plaintiff's impairments do not meet or medically equal the severity of an impairment in the Listing of Impairments. (R. 18).

In making her residual functional capacity (RFC) assessment, the ALJ summarized the evidence, including Plaintiff's allegations, the medical records,[1] and the medical

---

[1]The court notes that the administrative record filed with the court does not include three exhibits listed as medical records in the "Court Transcript Index." (Doc. 9, Attach. 3, Ex. A-2) (Identifying Exs. 26F, 27F, 28F). Neither party identified this ambiguity, and Plaintiff does not claim error in this regard. The court did not find it necessary to refer to these exhibits in deciding this case. On remand, the Commissioner will address this issue.

opinions; found Plaintiff's allegations of symptoms only partly credible; accorded "significant weight" to the opinions of the consultative psychological examiner, Dr. Mintz, and the state agency medical consultant, Dr. Cowles; and accorded "little weight" to the opinions of Plaintiff's treating physician, Dr. Corder. (R. 18-23). She concluded that Plaintiff has the RFC to perform a range of light work limited by the inability to climb ladders, ropes, or scaffolds; or to work with dangerous unprotected machinery or at unprotected heights. (R. 20). She found that Plaintiff has mental limitations restricting him to simple, unskilled work that is routine and low stress and requiring a specific vocational preparation (SVP) level of 1 or 2; that does not involve significant adaptations; and that does not require taking initiative, or making independent decisions. Id.

The ALJ found that plaintiff is unable to perform his past relevant work but that there are a significant number of jobs in the economy that Plaintiff can perform, based upon Plaintiff's RFC, age, education, and work experience. (R. 23-24). Consequently, the ALJ determined Plaintiff is not disabled within the meaning of the act, and denied his applications. (R. 25). Plaintiff sought review by the Appeals Council of the ALJ's decision, but review was denied. (R. 1-3, 8-11). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review. (Doc. 1).

**II.     Legal Standard**

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs existing in the economy which are within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to properly apply the Frey test in evaluating Plaintiff's credibility, and failed to relate all of Plaintiff's limitations with precision in her questioning of the vocational expert. The Commissioner argues that the ALJ properly considered the credibility of Plaintiff's allegations, including properly considering Plaintiff's noncompliance with treatment and medications; and that more specific

information regarding the frequency, type, and effect of Plaintiff's seizures was not required to be provided to the vocational expert. The court agrees with Plaintiff that the ALJ did not properly apply the Frey test, and remands for proper consideration. Because proper evaluation of the credibility of Plaintiff's allegations will potentially affect the RFC assessed on remand, it would be premature at this time to address Plaintiff's argument regarding the precision of the ALJ's questioning of the vocational expert.

**III.     Applying the Frey Test in Evaluating Credibility**

Plaintiff claims that the ALJ improperly applied the Frey test, arguing that the ALJ erred both in finding that compliance with Plaintiff's medication regimen would restore his ability to work, and in failing to consider whether Plaintiff's noncompliance was justifiable. (Pl. Br. 8-12). The Commissioner claims that the ALJ made a proper credibility determination, and argues that as one factor in that determination the ALJ properly considered Plaintiff's noncompliance with his medication regimen, and properly determined both that "lack of finances" did not justify Plaintiff's noncompliance, and that compliance would reduce the frequency and potentially limiting effects of his (seizure) condition. (Comm'r Br. 4-8).

**A.     The ALJ's Findings**

The ALJ considered and discussed the credibility of Plaintiff's allegations of disabling limitations resulting from his seizure disorder. (R. 20-22). She determined that Plaintiff's allegations "concerning the intensity, persistence, and limiting effects of these

symptoms <u>are not credible</u> to the extent they are inconsistent with the above residual functional capacity assessment." (R. 21) (emphasis added). As the Commissioner argues, the ALJ discussed Plaintiff's treatment for his seizure disorder, and his compliance with that treatment as one factor in her credibility determination:

> The evidence of record establishes that the claimant has been diagnosed with and treated for a seizure disorder. The record reflects one hospitalization for seizures, at which point the claimant was observed to have post-ictal symptoms such as confusion and generalized weakness (Exhibit 21F). The claimant also complained of headaches. An MRI of the claimant's brain was negative. At the time of his hospitalization, it was noted that the claimant admitted he was not taking his medication as prescribed (Exhibit 21F). According to the hospital records, the claimant reported that he had missed several doses of his anti-seizure medication despite reporting to his doctor that he had been compliant with treatment (Exhibit 21F, p.7). The claimant reported on another occasion that he had missed his medication for five days (Exhibit 22F).
>
> While the claimant has stated that he is not compliant with his medication due to cost, the record indicates that he has qualified for prescription assistance since at least 2005 (Exhibit 2F). As noted above, the claimant admitted that he had not taken his medication despite stating otherwise to his primary physician. These are factors which must be taken into account in assessing the overall credibility of the claimant's allegations. <u>In addition, his treating physician has opined that the claimant's condition could possibly be controlled by medication. These factors indicate that, were the claimant to cooperate fully with his medication and follow-up care, the frequency and potential limiting effects of his condition would be reduced.</u>

(R. 21-22) (emphasis added).

**B.   Analysis**

The ALJ's findings of fact--(1) that Plaintiff stated he could not afford his medication even though he was qualified for prescription assistance,[2] and (2) that Plaintiff told his physician he was taking his medication while at the same time admitting that he had not taken his medication--are factors which tend to detract from the credibility of Plaintiff's allegations, and were, therefore, properly used in the ALJ's credibility determination. (R. 21-22). However, the ALJ went on to find, in the underlined portion above, that proper compliance with Plaintiff's treatment regimen would reduce the frequency and limiting effects of his seizure disorder. It is this determination which the court finds erroneous, and for which remand is necessary for a proper determination.

As Plaintiff asserts, the Tenth Circuit has explained the proper analysis when a disability claimant fails or refuses to follow treatment prescribed by a treating physician. (Pl. Br. 7-8) (citing Frey, 816 F.2d 508). In Frey, the ALJ found Plaintiff's allegations of symptoms incredible, among other reasons, because of a "lack of pain medication." Frey, 816 F.2d at 515. The court stated what has become known as "the Frey test:" that, "In reviewing the impact of a claimant's failure to undertake treatment, . . . [the court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was

---

[2]The parties argue whether substantial evidence in the record supports a finding that Plaintiff is qualified for prescription assistance. (Pl. Br. 11-12); (Comm'r Br. 6-7); (Reply 1). Because the court does not rely upon this finding to decide that remand is necessary, it need not decide the issue here. The Commissioner would be well-advised on remand to revisit this finding and ensure it is supported by substantial evidence.

refused; and, if so, (4) whether the refusal was without justifiable excuse." Id. at 517.  In Frey, the court found the ALJ's reliance on the failure to take pain medication was erroneous in that the failure was justified because the unrefuted testimony of two treating physicians indicated that pain medication "was contraindicated because of the side effects of stomach irritation." Id.

In Thompson, 987 F.2d at 1486, the facts revealed that the plaintiff took prescription medication for a time but quit because she could not afford it, and she later stopped seeing the doctor because she could not afford that.  The court applied the Frey test in evaluating "the claimant's failure to pursue treatment or take medication." Id. at 1490.  Here, the ALJ discounted the credibility of Plaintiff's allegations because of his failure "to cooperate fully with his medication and follow-up care."  There is no doubt Plaintiff did not fully comply with the treatment offered.  However, the proper analysis for consideration lies in the Frey test:  (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse.

With regard to factor (1)--whether the treatment would restore Plaintiff's ability to work--the ALJ stated:  "his treating physician has opined that the claimant's condition could possibly be controlled by medication."  (R. 22) (emphasis added).  One might infer from this statement that the ALJ answered the first question in the affirmative.  But, on its face the statement reveals that the treating physician only believed that medication might

10

control the seizures. Moreover, there is nothing in this statement regarding the degree of control which might be provided by medication, and, as Plaintiff points out there are multiple treatment notes in the medical records where the treating physician indicated that Plaintiff's seizures were "resistant" to medication. (Pl. Br. 8) (citing (R. 567, 588, 589, 590, 591)).

It would no doubt be better if the ALJ had stated rather than implied a finding that treatment would restore the ability to work. Moreover, in these circumstances, it is absolutely essential that she explain why she reached such a finding in the face of the actual language of the treating physician, in light of the equivocal statement regarding degree of control, and in light of the physician's note that the seizures were "resistant" to medication. It was error for the ALJ to fail to discuss this significantly probative evidence she apparently rejected. Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).

In his argument, Plaintiff acknowledges that the state agency medical consultant, Dr. Cowles, stated that Plaintiff "would 'likely' have no seizures at all if he complied with medication." (Pl. Br. 8) (citing (R. 434)). He then speculates that the ALJ likely based her conclusion--that treatment would restore Plaintiff's ability to work--on Dr. Cowles's statement, and goes on to explain how, in his view, Dr. Cowles's statement is entitled to little weight, and is not supported by substantial record evidence. Id. at 9. In his brief, the Commissioner also cites to evidence from Dr. Corder and Dr. Cowles, and

11

from Dr. Jones, and argues that the ALJ's determination was "reasonable" based upon this record evidence. The common thread in these opposing explanations is that neither of them was given by the ALJ. The court's duty is to determine whether the ALJ's decision is supported by substantial record evidence, Lax, 489 F.3d at 1084; White, 287 F.3d at 905; 42 U.S.C. § 405(g) (sentence five), and it may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan, 399 F.3d at 1263. Remand is necessary for the Commissioner to apply the Frey test properly and to explain his findings.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 2nd day of December 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**